In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3485

STEVEN ANDERSON,

Petitioner-Appellant,

v.

ROGER D. COWAN, Warden,

Respondent-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 3352--Ruben Castillo, Judge.


Argued June 7, 2000--Decided September 15, 2000


  Before POSNER, COFFEY and RIPPLE, Circuit Judges.

  RIPPLE, Circuit Judge.  Mr. Anderson was tried
before a jury in an Illinois trial court and
found guilty of first-degree murder, armed
robbery, and aggravated kidnaping. He was
sentenced to a life term, a 30-year term, and a
15-year term, respectively./1 He then appealed
his conviction to the Appellate Court of
Illinois; that court upheld his conviction.
Thereafter, he sought leave to appeal to the
Supreme Court of Illinois, but his petition was
denied. Mr. Anderson next filed a petition for
writ of habeas corpus in the district court. The
district court denied his habeas petition but
granted a certificate of appealability on the
issue of whether Mr. Anderson's Confrontation
Clause rights had been violated under Bruton v.
United States, 391 U.S. 123 (1968). The district
court refused to issue a certificate with respect
to Mr. Anderson's remaining two issues: whether
he received ineffective assistance of counsel and
whether he is entitled to a Batson hearing. For
the reasons set forth in the following opinion,
we affirm the judgment of the district court.

I
BACKGROUND

  A confidential informant told the police that a
man named Lorne Gray was involved in the unsolved
murder of Alan Cypin. Over a year earlier,

Cypin's body had been found in an alley. The police then questioned Gray, and he confessed to the murder, but also implicated Mr. Anderson. The police then located Mr. Anderson and requested that he appear at the police station.

Upon Mr. Anderson's arrival at the police station, the police placed him under arrest, informed him of his Miranda rights, and then questioned him about his involvement in Cypin's murder. While the police were administering a polygraph test, Mr. Anderson confessed his role in the crime to Officer Garrity. Mr. Anderson then repeated the same confession to Officers Garrity, Harrington, and Puttin. Later in the evening, he repeated his confession to an assistant state's attorney, and, finally, he confessed a fourth time during a court-reported statement.

The State of Illinois ("the State") prosecuted Mr. Anderson for the murder, robbery, and kidnaping of Cypin. Gray was tried simultaneously on the same charges before the same court but by a separate jury. At the trial, Officer Garrity testified about Mr. Anderson's confession to him. Then, Officer Harrington testified that Mr. Anderson had repeated the same story when he had confessed the second time. Only these first two confessions of Mr. Anderson were admitted into evidence. Officer Harrington also testified about Gray's confession, which implicated Mr. Anderson.

II
DISCUSSION
A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. sec. 2254,/2 provides, in pertinent part, that habeas relief may be granted only if the adjudication of the claim by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. sec. 2254 (d)(1). The Supreme Court, in Williams v. Taylor, 120 S. Ct. 1495 (2000), clarified the meaning of this standard. In Williams, the Court explained that a state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Id. at 1519. The Court then stated that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably

within sec. 2254(d)(1)'s 'contrary to' clause." Id. at 1520. The Court therefore focused on the second phrase of the same subsection: "unreasonable application" of clearly established Supreme Court precedent. It interpreted "unreasonable application of" as either: "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 1520.

We review the district court's decision to deny habeas de novo. See Washington v. Smith, 219 F.3d 620, 627 (7th Cir. 2000); Lieberman v. Washington, 128 F.3d 1085, 1091 (7th Cir. 1997). When the case falls under sec. 2254(d)(1)'s "contrary to" clause, we review the state court decision de novo to determine the legal question of what is clearly established law as determined by the Supreme Court and whether the state court decision is "contrary to" that precedent. See Schaff v. Snyder, 190 F.3d 513, 522 (7th Cir. 1999). When the case fits under the "unreasonable application of" clause of sec. 2254(d)(1), however, we defer to a reasonable state court decision. See id. ("Whether the state court's holding involved an 'unreasonable application' of clearly established federal law, as determined by the Supreme Court, is a mixed question of law and fact that we traditionally also review de novo but with a grant of deference to any reasonable state court decision.").

B. Confrontation Clause Violation

Mr. Anderson argues that his Sixth Amendment right to confront the witness against him was violated in the trial court. The trial court admitted into evidence Gray's confession that implicated Mr. Anderson; however, Gray did not take the stand, and Mr. Anderson was unable to cross-examine him. The Appellate Court of Illinois held that the admission of Gray's confession violated Mr. Anderson's rights under the Confrontation Clause. It further held, however, that overwhelming and incontrovertible evidence of Mr. Anderson's guilt existed. The court found that the outcome of Mr. Anderson's trial was unaffected by the Confrontation Clause violation and that the error therefore was harmless beyond a reasonable doubt. Before us, as he did in the district court, Mr. Anderson argues that the admission of Gray's confession constituted a violation of the Sixth Amendment as set forth by the Supreme Court in Bruton v.

United States, 391 U.S. 123 (1968).

   In Bruton, two defendants, Evans and Bruton,
were tried jointly. At their trial, the trial
court admitted the pretrial confession of Evans,
which implicated Bruton. The Supreme Court held
that Evans' confession was not admissible against
Bruton unless Evans waived his Fifth Amendment
right not to testify so that Bruton would be
permitted to cross-examine him. See id. at 127-
28. By admitting Evans' confession against
Bruton, the Court determined, Bruton's Sixth
Amendment rights under the Confrontation Clause
were violated. See id. Moreover, the Court
explained, a limiting instruction was not
sufficient to cure the error. See id. at 135-37.

   The Supreme Court has explained that a violation
of the Bruton rule may be harmless error if there
is overwhelming evidence of the defendant's
guilt. See Harrington v. California, 395 U.S.
250, 253 (1969) (explaining that the case against
the defendant "was so overwhelming that we
conclude this violation of Bruton was harmless
beyond a reasonable doubt"). "In some cases the
properly admitted evidence of guilt is so
overwhelming, and the prejudicial effect of the
codefendant's admission is so insignificant by
comparison, that it is clear beyond a reasonable
doubt that the improper use of the admission was
harmless error." Schneble v. Florida, 405 U.S.
427, 430 (1972); see also United States v.
Martin, 897 F.2d 1368, 1372 (6th Cir. 1990) ("A
federal constitutional error can be held harmless
only if the Court is able 'to declare a belief
that it was harmless beyond a reasonable doubt.'"
(quoting Chapman v. California, 386 U.S. 18, 24
(1967))). Moreover, the Court explained, "unless
there is a reasonable possibility that the
improperly admitted evidence contributed to the
conviction, reversal is not required." Schneble,
405 U.S. at 432.

   In Delaware v. Van Arsdall, 475 U.S. 673 (1986),
the Supreme Court set forth the factors for
determining whether a violation of the
Confrontation Clause was harmless error. See id.
at 684. The Court explained as follows:

Whether such an error is harmless in a particular
case depends upon a host of factors, all readily
accessible to reviewing courts. These factors
include the importance of the witness' testimony
in the prosecution's case, whether the testimony
was cumulative, the presence or absence of
evidence corroborating or contradicting the
testimony of the witness on material points, the
extent of cross-examination otherwise permitted,
and, of course, the overall strength of the
prosecution's case.

Id.; see also United States v. Eskridge, 164 F.3d 1042, 1044 (7th Cir. 1998) (citing Van Arsdall). In Cruz v. New York, 481 U.S. 186, 189-90 (1987), the Court gave further guidance on Bruton-type errors and, significantly, gave additional instruction on the methodology for determining whether such an error may be considered harmless. Specifically, the Court held that, when a nontestifying co-defendant's confession is not admissible directly against the defendant, the Confrontation Clause bars its admission at their joint trial even if the jury is instructed to not consider it against the defendant and even if the defendant's own confession is admitted against him. See id. at 193. The Court further explained that "the defendant's confession . . . may be considered on appeal in assessing whether any Confrontation Clause violation was harmless." Id. at 193-94 (citations omitted) (emphasis added). Cruz holds that the interlocking nature of the confessions does not prevent a Confrontation Clause violation; however, the interlocking nature of the confessions may render the violation harmless. See id. at 191.

The district court agreed with the Appellate Court of Illinois that the admission of Gray's confession violated Mr. Anderson's rights under the Confrontation Clause. However, the district court relied upon Cruz to hold that the Bruton error was harmless. Even if Gray's confession was excluded from the evidence, reasoned the district court, Mr. Anderson's confession was sufficient to sustain his conviction because a reasonable jury would have found Mr. Anderson guilty. The district court concluded that the state appellate court's decision--that this error was harmless beyond a reasonable doubt--was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

As the district court cogently noted, in considering whether the admission of Gray's confession against Mr. Anderson was prejudicial, we may take into consideration Mr. Anderson's two confessions. During those confessions, he provided detailed accounts of the crimes. Many of the specific details provided in Mr. Anderson's confessions were also present in Gray's confession. Following the Supreme Court in Cruz, the corroboration between the two confessions suggests that the admission of Gray's confession may be harmless error.

The state court concluded that the admission of Gray's confession in violation of Bruton was harmless error, and it reached this conclusion by recognizing that there was "overwhelming and incontrovertible evidence of defendant Anderson's

guilt." R.29, Ex.A at 12. The state court pointed out that witness testimony and physical evidence linked Mr. Anderson to the crime. Moreover, Mr. Anderson twice confessed to the crime. In light of all the evidence against Mr. Anderson, we cannot conclude that the state court's determination that the admission of Gray's confession against Mr. Anderson was harmless error is "contrary to or an unreasonable application of" the clearly established Supreme Court precedent of Bruton and its progeny./3

## C.  Ineffective Assistance of Counsel

Mr. Anderson also submits that he was denied effective assistance of counsel in the Appellate Court of Illinois because counsel failed to pursue the trial court's denial of Mr. Anderson's motion to suppress his confessions. The district court determined that Mr. Anderson procedurally defaulted this claim.

### 1.

The district court did not grant a certificate of appealability on this claim. When a district court does not certify an issue for appeal, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. sec. 2253(c)(2). As the Supreme Court recently held, for a petitioner to make a substantial showing of the denial of a constitutional right, the petitioner must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 120 S. Ct. 1595, 1603-04 (2000) (citations and quotation marks omitted). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 1604./4 Mr. Anderson therefore must make a substantial showing of the denial of his Sixth Amendment right to effective assistance of counsel before we may consider the merits of this claim. See Schaff, 190 F.3d at 528.

### 2.

If a petitioner failed to raise his claim to the state courts, and therefore failed to give the state courts "the first opportunity to review this claim and provide any necessary relief," he has procedurally defaulted the claim. See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999); Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999). If a petitioner procedurally defaulted on his claim in the state court, a federal court may not grant habeas relief unless the petitioner "can demonstrate cause for the default and actual

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Thomas v. McCaughtry, 201 F.3d 995, 999 (7th Cir. 2000); Rodriguez, 193 F.3d at 917; Crivens v. Roth, 172 F.3d 991, 995 (7th Cir. 1999).

The district court pointed out that Mr. Anderson did not raise his ineffective assistance of counsel claim in his petition for appeal to the Supreme Court of Illinois. This failure, the district court held, denied that court the opportunity to decide the claim. Moreover, the district court noted that state post-conviction relief was no longer available for Mr. Anderson. Therefore, the district court concluded, Mr. Anderson procedurally defaulted on his ineffective assistance of counsel claim. To allow him to proceed in federal court on his habeas claim despite the procedural default, Mr. Anderson must show, the district court stated, cause for the default and actual prejudice due to the default, or he must show that a failure to consider the claim would result in a fundamental miscarriage of justice. Because Mr. Anderson failed to argue cause and prejudice, the district court held that it could not consider the merits of Mr. Anderson's claim./5

Mr. Anderson asserts that he has a constitutional right to effective assistance of counsel and that, in his appeal to the Appellate Court of Illinois, his counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984), because counsel did not raise the denial of Mr. Anderson's motion to suppress his confessions./6 Mr. Anderson also claims that the same counsel was ineffective before the Supreme Court of Illinois when he failed to raise his own failure to bring the suppression issue before the Appellate Court of Illinois. This second lapse by counsel, he claims, constituted "cause" for his failure to raise his ineffective assistance of counsel claim before the state courts.

Mr. Anderson has procedurally defaulted his ineffective assistance of counsel claim. To preserve this claim for habeas review, Mr. Anderson needed to present it to the Supreme Court of Illinois in his petition for discretionary review. See Boerckel, 526 U.S. at 848. In failing to present this claim to the Illinois courts, Mr. Anderson deprived the state courts of the first opportunity to review it. See id. at 844. This failure resulted in a procedural default of his claim. See id. at 848.

Mr. Anderson argues that, because he had

ineffective assistance of counsel in his petition to the Supreme Court of Illinois, there is "cause" for his failure to present his ineffective assistance of counsel claim in his petition for discretionary review to the Supreme Court of Illinois. The Supreme Court of the United States has held that "[a]ttorney error that constitutes ineffective assistance of counsel is cause." Coleman, 501 U.S. at 753-54. However, "a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals," Wainwright v. Torna, 455 U.S. 586, 587 (1982), and "the right to appointed counsel extends to the first appeal of right, and no further." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In proceedings in which a petitioner does not have a constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." See Coleman, 501 U.S. at 752-53. Mr. Anderson therefore had no constitutional right to counsel for his discretionary petition to the Supreme Court of Illinois, and he could not have received ineffective assistance of counsel for the failure of counsel to raise his ineffective assistance of counsel claim in his petition to the Supreme Court of Illinois. See id. Mr. Anderson thus has procedurally defaulted his ineffective assistance of counsel claim, and he has not made a substantial showing of the denial of a constitutional right.

D. Batson Claim

To make out a prima facie case of purposeful discrimination under Batson v. Kentucky, 476 U.S. 79 (1986), Mr. Anderson needs to show that the State struck a member of a constitutionally protected class during jury selection and that all the relevant circumstances raise an inference of intentional discrimination by the State. See United States v. Brisk, 171 F.3d 514, 523 (7th Cir.), cert. denied, 120 S. Ct. 150 (1999). Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. See Batson, 476 U.S. at 96-97; cf. United States v. Cooke, 110 F.3d 1288, 1301 (7th Cir. 1997) (stating that the mere fact that the prosecutor used his peremptory challenges to exclude two African-Americans, without more, is insufficient to raise an inference of discrimination); Brisk, 171 F.3d at 523 (same).

The Appellate Court of Illinois held that Mr. Anderson failed to make out a prima facie case of race discrimination under Batson. The state court said that it was unable to discern the race of the jury or of the other excluded venire members because Mr. Anderson failed to preserve the

record of the racial composition of the venire pool. The prosecutor's use of two of its peremptory challenges to exclude African-American women from the jury, according to the court, failed to establish an inference of discrimination under Batson. Thus, the state court held that Mr. Anderson failed to establish his prima facie case for a Batson hearing.

The district court also held that Mr. Anderson was not entitled to a Batson hearing because he could not establish a prima facie case of purposeful discrimination by the prosecutor in the use of his peremptory challenges. Mr. Anderson could not establish a prima facie case, explained the district court, because to do so he needed to do more than simply point to the fact that the State excluded an African-American venire person when using a peremptory challenge. Instead, the district court stated, the defendant must have shown that, when considering all the relevant circumstances, such as a pattern of strikes or the questions of the prosecutor, there was an inference of intentional discrimination. The district court therefore refused to hold that Mr. Anderson was entitled to a Batson hearing.

Mr. Anderson asserts that his request for a Batson hearing was incorrectly denied. He argues that he made out a prima facie case of purposeful discrimination by the State based solely on the prosecutor's exercise of peremptory challenges at his trial. He states that he needs to show only that he is a member of a cognizable racial group and that the prosecutor removed venire members of his race; the race of the jury or the other excluded venire members, he claims, does not indicate whether the prosecutor used the two peremptory challenges in a discriminatory fashion. "To establish a prima facie case of purposeful discrimination under Batson," however, Mr. Anderson "must do more than merely point to the fact that the government excluded an African-American venireperson by using a peremptory challenge." Cooke, 110 F.3d at 1301. Instead, he also must show that the facts and "any other relevant circumstances" raise an inference of discriminatory practice by the prosecutor. Batson, 476 U.S. at 96. According to the Supreme Court in Batson:

In deciding whether the defendant has made the requisite showing [for a prima facie case], the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may

support or refute an inference of discriminatory purpose. These examples are merely illustrative.

Id. at 96-97. Mr. Anderson does not provide any other "relevant circumstances" to inform us whether the prosecutor used the peremptory challenges in a discriminatory manner, and the Appellate Court of Illinois' denial of a Batson hearing is therefore not contrary to or an unreasonable application of clearly established Supreme Court precedent. Mr. Anderson has not made a substantial showing of the denial of a constitutional right.

Conclusion

   For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

/1 The armed robbery term was to run consecutively with the murder sentence and the aggravated kidnaping term was to run concurrently with the armed robbery sentence.

/2 AEDPA applies to Mr. Anderson's case because he filed his federal habeas petition after the effective date of AEDPA, April 25, 1996. See Lindh v. Murphy, 521 U.S. 320, 336 (1997).

/3 Before AEDPA, federal courts assessed, on habeas review, whether a constitutional error was harmless by applying the rule articulated by the Supreme Court in Brecht v. Abrahamson, 507 U.S. 619 (1993). Under that formula, the federal habeas courts were to inquire, in the case of trial error, whether that error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). This standard was refined by the Court in O'Neal v. McAninch, 513 U.S. 432 (1995), which held that "where the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error," id. at 437, the petitioner must prevail, see id. at 436.

   It is unclear whether the holdings in Brecht and O'Neal have survived the passage of AEDPA. In Nevers v. Killigan, 169 F.3d 352 (6th Cir. 1999), our colleagues in the Sixth Circuit held that "the test set out by the Supreme Court in Kotteakos and explicitly reiterated in Brecht quite precisely captures Congress's intent as expressed in AEDPA and, therefore, continues to be applicable." Id. at 371. The court reasoned that, under Brecht, "it is the habeas petitioner's burden to demonstrate that the trial

error resulted in 'actual prejudice' . . . . If the petitioner is able to make that showing, he will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt--the Chapman standard-- was outside the realm of plausible credible outcomes, and therefore resulted from an unreasonable application of Chapman." Id. at 370 (quoting Brecht, 507 U.S. at 637). Nevers has been followed in the Sixth Circuit, although with a marked lack of enthusiasm. See Maurino v. Johnson, 210 F.3d 638, 644 (6th Cir. 2000) (following Nevers "because there has been no intervening Supreme Court decision invalidating that panel's decision"), abrogation on other grounds recognized by Harris v. Stovall, 212 F.3d 940 (6th Cir. 2000). The Eighth Circuit, by contrast, has indicated, in dicta, skepticism about the continued vitality of Brecht. See Whitmore v. Kenna, 213 F.3d 431, 433 (8th Cir. 2000). We need not take sides on this disagreement. Even if we assume that Brecht articulates a more generous standard than AEDPA, we must conclude that, under that more generous standard, the error was harmless. See Thomas v. Gibson, 218 F.3d 1213, 1226 n.12 (10th Cir. 2000).

/4 See also Porter v. Gramley, 112 F.3d 1308, 1312 (7th Cir. 1997) (stating that a petitioner must demonstrate that an issue is debatable among jurists or that "the questions 'deserve encouragement to proceed further'" (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983))).

/5 The district court further explained that, even if it reached the merits, Mr. Anderson's ineffective assistance of counsel claim would fail. Under Strickland v. Washington, 466 U.S. 668 (1984), Mr. Anderson is required to show that his counsel's performance was so deficient that it fell below an objective standard of reasonableness and that he was prejudiced by this deficient performance and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

According to the district court, Mr. Anderson claims that his court-reported statement violated Miranda and, thus, that his counsel's failure to object to that confession constituted constitutionally deficient performance. As the district court pointed out, this statement by Mr. Anderson was not even introduced into evidence at trial. His first two confessions, for which there is uncontested evidence that prior to his statements Mr. Anderson was read his Miranda rights, were introduced at trial. The potential Miranda violation for his fourth (as well as his

third) confession does not nullify the validity of his first two confessions. Thus, the district court held that Mr. Anderson's counsel was not acting deficiently in failing to object to the admission of his confessions at trial.

/6 Mr. Anderson filed a motion to suppress his confessions. The State admitted that his court-reported statement violated Miranda and agreed not to use it at trial. He claims that he produced enough evidence of Miranda violations for his other confessions in his motion to suppress that those confessions should not have been admitted into evidence.

The failure of his counsel to pursue the denial of his motion to suppress his confessions, according to Mr. Anderson, is a violation of his Sixth Amendment right to effective assistance of counsel. Mr. Anderson contends that there is no strategic reason for appellate counsel's failure to raise the denial of the motion to suppress his statements in the state court. Failure of counsel to raise this claim, Mr. Anderson argues, prejudiced him because, without these confessions, no evidence existed against him (except for the constitutionally questionable confession of his co-defendant).