In the
United States Court of Appeals
For the Seventh Circuit

No. 98-4275

Jeffrey C. Denny,

Petitioner-Appellant,

v.

Donald Gudmanson,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97 C 405--Charles N. Clevert, Judge.

Argued March 30, 2001--Decided May 18, 2001


   Before Flaum, Chief Judge, and Posner and
Evans, Circuit Judges.

   Flaum, Chief Judge.  After the Supreme
Court handed down its decision in Cruz v.
New York, 481 U.S. 186 (1987), Jeffrey
Denny sought to have his 1982 murder
conviction overturned. Jeffrey argued
that, according to Cruz, the admission of
his brother's inculpatory statements at
their joint trial in 1982 constituted a
violation of the Confrontation Clause of
the Sixth Amendment. The Wisconsin trial
court denied Jeffrey's motion, and the
Court of Appeals of Wisconsin affirmed
that decision. State v. Denny, 163 Wis.
2d 352 (Ct. App. 1991). When the Supreme
Court of Wisconsin denied Jeffrey's
appeal, State v. Denny, 474 N.W.2d 107
(Wis. 1991), he sought habeas relief in
the District Court for the Eastern
District of Wisconsin. While the district
court concluded that there has been a
violation of Cruz, it agreed with the
state court of appeals that any error was
harmless. Thus, the court denied
Jeffrey's petition for habeas relief. We
granted a certificate of appealability to
resolve the issues of whether the
admission of Jeffrey's brother's
inculpatory statements at their joint
trial violated Cruz, and, if so, whether
that violation was harmless. For the
reasons stated herein, we affirm the
district court's denial of habeas relief.

## I. BACKGROUND

On January 16, 1982, Christopher Mohr was found dead, the victim of fifty-seven stab wounds and multiple head traumas. Though there were no eyewitnesses to the murder, the police investigation ultimately centered on Jeffrey Denny and his brother Kent Denny. Subsequent to Mohr's slaying, both Jeffrey and his brother made numerous inculpatory statements, vaunting about the murder to family members, friends, and acquaintances. In due time, those statements caught up with the pair, as they were arrested and scheduled to be tried jointly for first degree murder.

On August 27, 1982, at a pretrial hearing, Jeffrey objected to the admission of statements made by Kent which implicated Jeffrey in the crime, and further moved to sever his trial from that of his brother. The trial court, relying on the plurality opinion of the Supreme Court in Parker v. Randolph, 442 U.S. 62 (1979) denied the motion, finding that the prosecution intended to present testimony of "interlocking" inculpatory statements by both co-defendants. At their joint trial, neither co-defendant testified, though numerous witnesses testified as to Kent and Jeffrey's confessions. The trial culminated on November 16, 1982, with a judgment of conviction being entered against Jeffrey on one count of first degree murder under Wis. Stat sec. 940.01./1 On December 5, 1984, in an unpublished order, the Wisconsin Court of Appeals affirmed Jeffrey's conviction.

In 1987, the Supreme Court revisited the issue of interlocking confessions in the case of Cruz, 481 U.S. 186. Contrary to the plurality decision in Parker--which the Wisconsin courts had relied on in denying Jeffrey's motion--a majority of the Court in Cruz determined that, in a joint trial, the interlocking nature of confessions did not preclude a Confrontation Clause violation. Thereafter, Jeffrey filed a motion for a new trial under Wis. Stat. sec. 974.06, arguing that the admission of Kent Denny's confessions violated his rights under the Confrontation Clause of the Sixth Amendment as interpreted in the

Supreme Court's decision of Cruz. A hearing was held on the matter, and on April 24, 1990, the trial court denied Jeffrey's motion. That decision was affirmed by the Wisconsin Court of Appeals on May 15, 1991. See Denny, 163 Wis.2d. at 352. The court noted in its decision that Cruz would require reversal only if Kent Denny's statements which incriminated Jeffrey were not directly admissible against Jeffrey at their joint trial. However, because the court concluded that the statements were directly admissible against Jeffrey--as falling within the "firmly-rooted" hearsay exception of statements against interest--the court found that the Confrontation Clause posed no bar to the admission of those declarations. See id. at 358. Additionally, the court stated that because of the overwhelming evidence of guilt, any error in admitting the statements of Kent Denny would be considered harmless. See id. at 359-60. Thereafter, the Wisconsin Supreme Court denied Jeffrey's appeal. State v. Denny, 474 N.W.2d at 107.

On April 18, 1997, Jeffrey filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of Wisconsin, challenging the admission of the inculpatory statements made by Kent Denny on the ground that the admission violated the Confrontation Clause. On December 2, 1998, the district court denied Jeffrey's habeas petition. In doing so, the district court first noted that admission of Kent Denny's statement through third parties did in fact violate Jeffrey's rights under the Confrontation Clause. Specifically, the court ruled that the out-of-court statements did not come within a firmly-rooted exception to the hearsay rule, and were therefore admitted in violation of Jeffrey's right of confrontation. However, because the court was convinced beyond a reasonable doubt that the jury would have convicted Jeffrey absent Kent Denny's statement, the court found the error to be harmless. This Court issued a Certificate of Appealability on March 29, 2000, on the following issues:

1. Whether the introduction of Denny's non-testifying co-defendant's confession through the testimony of third-party witnesses violated Cruz v. New York, 481

U.S. 186 (1987)?

  2. If Cruz was violated, was the error harmless?

Because the district court found that there had been a Cruz violation, Jeffrey does not contest that ruling. Jeffrey does challenge, however, the district court's finding that any error in admitting Kent's statements constituted harmless error. Specifically, Jeffrey asserts that the district court improperly analyzed the harmlessness question under an inappropriate standard.

## II. DISCUSSION

### A. Standard of Review

  Because the habeas petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. sec. 2254, the standard of review contained in the Act governs Jeffrey's claims. See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997). AEDPA provides, in relevant part, that habeas relief may be granted only if the adjudication of the claim by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. sec. 2254(d)(1). In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court expounded on this standard, asserting that a state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 405; see also Anderson v. Cowan, 227 F.3d 893, 896 (7th Cir. 2000). As for the "unreasonable application" portion of the statute, the Court interpreted the phrase to encompass the situations where "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or "the state court either unreasonably

extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407.

In an appeal from a ruling on a petition for habeas relief, we review the district court's findings of fact for clear error and its rulings on issues of law de novo. See Foster v. Schomig, 223 F.3d 626, 634 (7th Cir. 2000), cert. denied, Foster v. Neal, 121 S.Ct. 1407 (2001). When the case falls under sec. 2254(d)(1)'s "contrary to" clause, we review the state court decision de novo to determine the legal question of what is clearly established law as determined by the Supreme Court and whether the state court decision is "contrary to" that precedent. See Anderson, 227 F.3d at 896; see also Schaff v. Snyder, 190 F.3d 513, 522 (7th Cir. 1999). However, when the case fits within the "unreasonable application" provision of sec. 2254(d)(1), we defer to a reasonable state court decision. See Anderson, 227 F.3d at 896-97. State court factual findings that are reasonably based on the record are accorded a presumption of correctness. See 28 U.S.C. sec. 2254(e)(1); Kurzawa v. Jordan, 146 F.3d 435, 440 (7th Cir. 1998).

B.  Confrontation Clause Violation

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." The Supreme Court has held that the guarantee, which is extended against the states by the Fourteenth Amendment, includes the right to cross-examine witnesses. See Pointer v. Texas, 380 U.S. 400, 404 (1965). Therefore, in Bruton v. United States, the Court found that where two or more defendants are tried jointly, the pretrial confession of one of them that implicates the other is not admissible against the other unless the confessing defendant waives his Fifth Amendment right so as to permit cross-examination. 391 U.S. 123, 12-28 (1968). In Parker, the Supreme Court decided a case which resembled Bruton, save one large wrinkle: each of the jointly tried defendants had himself confessed, his own confession was introduced against him, and his confession recited essentially the same

facts as those of his nontestifying code fendant. A plurality of the Court determined that the admission of interlocking confessions,/2 with proper limiting jury instructions, did not violate the Confrontation Clause. In so deciding, the plurality understood Bruton to hold that the Confrontation Clause is violated only when the introduction of a codefendant's confession is "devastating" to the defendant's case. However, when the defendant has himself confessed, his "case has already been devastated," 442 U.S. at 75 n.7, so that the codefendant's confession "will seldom, if ever, be of the 'devastating' character referred to in Bruton," and impeaching that confession on cross-examination "would likely yield small advantage." Id. at 73.

At the time of Denny's trial, Parker represented the extent of the Supreme Court's guidance on the issue. Thus, when Jeffrey first raised his Confrontation Clause challenge to the admission of Kent Denny's statements, the Wisconsin courts examined whether this case contained interlocking confessions. Finding that the statements made by Jeffrey and Kent constituted interlocking confessions, the courts concluded that there had been no Confrontation Clause violation.

However, in 1987, the Supreme Court revisited the issue of interlocking confessions. In Cruz, the Court held that "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant . . . the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not toconsider it against the defendant, and even if the defendant's own confession is admitted against him." 481 U.S. at 193. Because the Court of Appeals had analyzed the petitioner's Confrontation Clause claim under the Parker approach which the Court rejected, the Court reversed and remanded Cruz's case. See id.

1. Hearsay Exception

Based on the Court's decision in Cruz, Jeffrey filed a motion for a new trial. After the Wisconsin trial court denied Jeffrey's motion, the case, once again, was before the Court of Appeals of Wisconsin. The court concluded that while, generally, a new rule should not

be applied retroactively to cases on collateral review, the rule enunciated in Cruz fell within one of the established exceptions to that prescript. See Denny, 163 Wis.2d. at 357. However, the court did not believe that application of Cruz mandated reversal of Jeffrey's conviction. "Cruz would require reversal only if Kent's statements--which incriminate Jeffrey--were not directly admissible against Jeffrey at their joint trial. We conclude that Kent's statements were directly admissible against his brother Jeffrey and, therefore, were not barred by the confrontation clause." Id. As the basis of its determination that the statements were directly admissible against Jeffrey, the court of appeals focused on the hearsay exception of "statements against interest," which it considered to be "firmly-rooted." See id.

In reviewing the petition for habeas relief, the district court did not agree with the Wisconsin Supreme Court's interpretation that Kent Denny's statements were directly admissible against Jeffrey. The court noted that although the confessions did in fact constitute statements against interest, that particular hearsay exception "defines too large a class [of statements] for meaningful Confrontation Clause analysis, Lee v. Illinois, 476 U.S. at 544 n.5." Therefore, the court determined that, in line with Lee, the statements were presumptively unreliable. See id. at 543.

We find that district court was correct in its determination that Kent Denny's statements were not directly admissible against Jeffrey merely because they constituted "statements against interest." As the Supreme Court has commented, "[r]eflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the [Confrontation] Clause countenances only hearsay marked with such trustworthiness that there is no material departure from the reason of the general rule." Ohio v. Roberts, 448 U.S. 56, 65 (1980) (internal citation omitted). It is true that hearsay rules and the Confrontation Clause are generally designed to protect similar values, see California v. Green, 399 U.S. 149, 155 (1970), and stem from the same

roots, see Dutton v. Evans, 400 U.S. 74, 86 (1970). However, simply because a statement falls within a hearsay exception does not necessitate a finding that there has been no Confrontation Clause violation. "The Court has applied this 'indicia of reliability' requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" Roberts, 448 U.S. at 66 (quoting Mattox v. United States, 156 U.S. 237, 244 (1895)) (emphasis added). While Wisconsin law has established that the "statement against interest" is a firmly-rooted hearsay exception, see State v. Buelow, 122 Wis.2d 465, 479 (Ct. App. 1984), the Supreme Court has concluded that, for Confrontation Clause purposes, this particular hearsay exception defines a class so broad that the exception may not always comport with the substance of the constitutional protection. See Lee, 476 U.S. at 544 n.5; see also Lilly v. Virginia, 527 U.S. 116, 127 (1999) ("We have previously noted that, due to the sweeping scope of the label, a simple categorization of a statement as a 'declaration against penal interest' . . . defines too large a class for meaningful Confrontation Clause analysis.")./3 Therefore, the district court rightly held that Kent's statements were presumptively unreliable.

2. Indicia of Reliability

In Confrontation Clause analysis, a firmly-rooted hearsay exception operates as a proxy for reliability. Thus,"[r]eliability can be inferred without more in a case where the evidence falls within a firmly-rooted hearsay exception." Roberts, 448 U.S. at 66. However, simply because a statement does not fall within such a hearsay exception does not mean that it must be excluded under the Confrontation Clause. Roberts recognized that even if hearsay evidence does not fall within a firmly-rooted hearsay exception, and is thus presumptively unreliable and inadmissible for Confrontation Clause purposes, it may nonetheless meet Confrontation Clause reliability standards if it is supported by a showing of particularized guarantees of trustworthiness. See id.; see also Lilly, 527 U.S. at 136 ("The residual

'trustworthiness' test credits the axiom that a rigid application of the Clause's standard for admissibility might in an exceptional case exclude a statement of an unavailable witness that is incontestably probative, competent, and reliable, yet nonetheless outside of any firmly-rooted hearsay exception."). However, that is a presumption that is not easily overcome. See Lee, 476 U.S. at 543-46.

After concluding that the statements attributed to Kent Denny did not fall within a firmly-rooted exception to the hearsay rule for Confrontation Clause analysis, and were thus presumptively unreliable, the district court did not analyze the statements to assess whether the presumption of unreliability was overcome. Rather, the district court simply moved on to discuss the Court of Appeals of Wisconsin's analysis of harmlessness. Because the Supreme Court has determined that "when deciding whether the admission of a declarant's out-of-court statements violates the Con frontation Clause, courts should independently review whether the [states]'s proffered guarantees of trustworthiness satisfy the demands of the Clause," Lilly, 527 U.S. at 137, we find the district court's decision to delve directly into harmlessness poses no problem to our review.

We believe that the statements in question possess sufficient indicia of reliability to warrant their admission. We are satisfied that these statements are not of the type whose reliability is particularly suspect--such as a confession that shifts or spreads blame from the declarant to incriminate co-criminals, or a custodial confession made to law enforcement authorities, where the declarant responds to the leading questions of officers without any opportunity for contemporaneous cross-examination. See id. at 137-38; United States v. Robbins, 197 F.3d 829, 839 (7th Cir. 1999). Rather, we believe that Kent's statements had sufficient indicia of reliability at the time they were made to deem them trustworthy. Kent's confessions were made in the course of noncustodial conversations with trusted friends and relatives. Furthermore, the statements were not of a blame-shifting nature; rather, they were equally

inculpatory. The circumstances under which they were made offer no reason to suspect coercion, ulterior motive, or desire to curry favor with law enforcement authorities. See Robbins, 197 F.3d at 840.

In Cruz, the Court held that the Confrontation Clause barred the admission of a codefendant's confession incriminating the defendant if that confession was not directly admissible against the defendant, even if the defendant's own confession is admitted against himself. 481 U.S. at 193. However, the Court noted that "[o]f course, the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him . . . despite the lack of opportunity for cross-examination." Id. at 193-94. In this instance, an examination of the statements made by Jeffrey further confirms the reliability of Kent's statements. Both brothers described the murder of Mohr in specific details to different parties. In different statements, they both boasted that Kent had begun the stabbing of Mohr and that Jeffrey took over. Furthermore, both brothers mentioned hitting the victim over the head with a bong pipe.

In sum, while we are mindful of "the time-honored teaching that a codefendant's confession inculpating the accused is inherently unreliable, and that convictions supported by such evidence violate the constitutional right of confrontation," Lee, 476 U.S. at 546, we find that the specific nature of the statements in this instance requires a departure from that principle. We cannot conclude that the state court's determination that Kent Denny's statements were directly admissible against Jeffrey is contrary to or an unreasonable application of clearly established Supreme Court precedent.

C.  Harmless Error

Though we granted a certificate of appealability and requested that the parties address the issue of harmlessness, because the state court's determination that there was no Cruz violation is not contrary to or an

unreasonable application of Supreme Court precedent, we need consider the question. However, assuming arguendo that there was error in admitting Kent's statements, we agree with the Court of Appeals of Wisconsin and the district court that any such error was harmless.

It is well established that a violation of the Confrontation Clause may be deemed harmless error if there is overwhelming evidence of the defendant's guilt. See Harrington v. California, 395 U.S. 250, 253 (1969). "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." Schneble v. Florida, 405 U.S. 427, 430 (1972). Furthermore, "unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." Id. at 432.

In Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986), the Supreme Court set forth factors for determining whether a violation of the Confrontation Clause was harmless error. The Court stated that:

Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Additionally, while the Supreme Court held in Cruz that the interlocking nature of confessions does not preclude a Confrontation Clause violation, the interlocking nature of confessions could operate to render the violation harmless. 481 U.S. at 191.

Despite the fact that the district court did not concur with the Wisconsin appellate court's determination that there had been no violation of the Confrontation Clause in this case, both

courts were in agreement that any error in admission was harmless.

As the Wisconsin Court of Appeals noted, five different people testified that Jeffrey Denny confessed to them his direct participation in the murder of Mohr. Another individual testified that Jeffrey had stated that a bag he was carrying contained the shoes he had worn when he committed the murder. When those shoes were recovered and examined, it was revealed that the treads matched a shoe print found at the murder scene. One person also testified that Jeffrey had said that, in addition to stabbing Mohr, he had hit the victim on the head with a bong pipe. At the murder scene, police discovered fragments from a bong pipe. All of the statements were consistent, made at different times and places, in some instances corroborated by physical evidence, and were found to be credible by the jury. Furthermore, these statements were independent from any made by Kent. Thus, the Wisconsin court ultimately determined that "even if Kent's statements were not directly admissible as to Jeffrey, it was harmless error to admit them."/4

In light of all the evidence against Jeffrey Denny, we cannot conclude that the state court's determination that the admission of Kent Denny's confessions against Jeffrey was harmless, if it was error at all, is "contrary to or an unreasonable application of" the clearly established Supreme Court precedent of Bruton and its progeny.

III.  CONCLUSION

For the foregoing reasons, we Affirm the decision of the district court.

FOOTNOTES

/1 Though not relevant to these proceedings, Kent Denny was also found guilty of one count of first degree murder.

/2 Interlocking inculpatory statements are those that clearly demonstrate the involvement of each defendant as to crucial facts such as time, place and activity and an awareness of an overall plan or scheme. See Parker, 442 U.S. at 67-68.

/3 In Lilly, the Court distinguished the three principal situations in which a statement against penal interest would be offered into evidence.

See Lilly, 527 U.S. at 127. The state's introduction of Kent Denny's statements would be considered to fall under the Court's first articulated justification, "as voluntary admissions against the declarant." Id. While the Court noted that such statements "are routinely offered into evidence against the maker of the statement and carry a distinguished heritage confirming their admissibility when so used," the mere fact that "one accomplice's confession qualified as a statement against his penal interest did not justify its use as evidence against another person." Id. at 127-28.

/4 Jeffrey argues that the district court erred in relying on the state court's determination of harmlessness, and furthermore applied the incorrect standard of harmless error in denying the writ. In addressing harmlessness, both the Wisconsin court and the district court appeared to have relied on the standard set forth in Chapman v. United States, 386 U.S. 18 (1967), examining whether the jury would have convicted Jeffrey absent Kent's statements.

As we noted in Anderson, the standard to be employed, post-AEDPA, in assessing whether a constitutional error is harmless is an open question. See Anderson, 227 F.3d at 898 n.3. Prior to AEDPA, federal courts analyzed questions of harmlessness, on habeas review, under the rule articulated in Brecht v. Abrahamson--inquiring whether the error had a substantial and injurious effect or influence in determining the jury's verdict. 507 U.S. 619, 637 (1993). However, whether that holding has survived the passage of AEDPA is unclear. See Anderson, 227 F.3d at 898 n.3 (examining the Sixth and Eighth Circuit's decisions on the issue). As in Anderson, we need not weigh in on the debate at this juncture. Even assuming that the Brecht standard--a standard more generous than the standard employed in this case--has survived the passage of AEDPA, given the overwhelming evidence of Jeffrey's guilt, under Brecht this error would be considered harmless.