In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3327

PAYSUN LONG,

*Petitioner-Appellant,*

*v.*

KIM BUTLER,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:11-cv-1265-MMM — **Michael M. Mihm**, *Judge.*

ARGUED DECEMBER 8, 2014 — DECIDED OCTOBER 27, 2015

Before BAUER and HAMILTON, *Circuit Judges*, and ELLIS, *District Judge*.[*]

ELLIS, *District Judge*. Petitioner-Appellant, Paysun Long ("Long") seeks reversal of the district court's denial of his petition for writ of habeas corpus filed pursuant to 28 U.S.C.

---

[*] The Honorable Sara L. Ellis, of the United States District Court for the Northern District of Illinois, sitting by designation.

§ 2254. Long brings due process claims related to the prosecution's failure to correct perjured testimony and use of racially-charged and improper comments during the trial, as well as ineffective assistance of trial and appellate counsel claims. We reverse and remand with instructions to the district court to grant the writ of habeas corpus. The district court's writ should order that Long is released unless Illinois gives notice of its intent to retry Long within a reasonable time to be set by the district court.

## I. BACKGROUND

Long has already been tried twice for the murder of Larriec Sherman ("Sherman"). Sherman was shot in the Taft Homes housing development in Peoria, Illinois, on June 11, 2001. When the responding officer arrived at the scene, Sherman lay outside on the ground near a bicycle. Fifty to sixty people were gathered around Sherman, who was transported to a nearby hospital where he died from multiple gunshot wounds.

Long was first tried for first degree murder in December 2001. No physical evidence tied Long to the crime, but the state presented four witnesses who identified him as the shooter. Two of those four witnesses named Long as the shooter during the investigation, but recanted at trial. Witness Brooklyn Irby ("Irby") identified Long as the shooter, but then testified on the stand that she told the State's Attorneys and their Investigator Frank Walter ("Walter") that her story about seeing Long shoot Sherman was a lie. In closing argument, the prosecutor made several improper statements not supported by the record evidence, including that two of the witnesses changed their stories out of fear, resulting in the reversal of Long's conviction and a new trial.

The current petition is based on Long's second trial in January 2004. The State again presented the four eyewitnesses, one of whom maintained her identification of Long. That witness, Keyonna Edwards ("Edwards") stated she was walking on the sidewalk when she saw Sherman riding a bicycle behind her. According to her testimony, she then heard gunshots, turned around, and from a distance of about six feet saw Long shoot Sherman from behind. Edwards stated she then cradled Sherman's head in her hands and noticed he had a gun in his pocket. She testified that another individual approached and took that gun, then she left the scene before the police arrived. The two witnesses who recanted their identifications of Long during the first trial continued to deny having seen him shoot Sherman, despite their prior videotaped statements that Long approached Sherman and shot him from behind.

The fourth eyewitness, Irby, testified that she was walking through the Taft Homes when she saw Long shoot Sherman from behind as Sherman was riding his bicycle. Irby did not notice anyone cradling Sherman's head and when she approached Sherman, she saw a gun on the ground. Irby stated she then left the area. Although Long's defense counsel cross-examined Irby about her prior trial testimony recanting her identification of Long, she denied ever telling the State's Attorneys and State's Attorney Investigator that her prior identification was false and compelled by police threats to have her children removed from her care. The same prosecutor who examined Irby in the first trial also examined Irby in the second trial, but did not correct Irby's denial of her prior sworn testimony. After the end of the State's case-in-chief, defense counsel presented Inves-

tigator Walter, who testified that Irby recanted her identification of Long at Long's first trial.

During closing arguments, the prosecutor made a series of comments along the theme that no evidence or theory was presented that another individual committed the crime. In addition, during rebuttal argument, the prosecutor used a personal anecdote about her experience with another murder case involving a reluctant witness. Also during rebuttal, in the context of discussing the crowd of people surrounding Sherman's body, the prosecutor referenced a scene in the movie "Gone With the Wind," where the slave Prissy tells Miss Scarlett she "don't know nothing about birthing no babies," stating:

> Officer Wetzel told you when he got there there were 40 to 60 people around Mr. Sherman. And sorry, Miss Scarlet, but we don't know nothing about birthing no babies, we just don't [know] nothing. 40–60 people standing around that night ... So, on the night of June 11, 2001, although there are 40 to 60 people around this dead young man or dying young man, nobody knew nothing, nobody came forward, nobody knows nothing.

SA.168–69. The prosecutor also referred to the contents of a letter written by Irby that had not been admitted into evidence, at which point the judge *sua sponte* objected to the hearsay reference. During jury deliberations, the jury sent the judge a note asking why the letter was not entered into evidence, but could still be referenced. The trial judge responded that the jury "should consider the testimony and

exhibits that have been admitted in evidence according to the written instructions that you received." SA.108.

The jury found Long guilty and the judge sentenced him to fifty-one years in prison.

Long raised two issues on direct appeal. First, appellate counsel challenged the *Gone With the Wind* and personal anecdote references in the prosecution's closing statement. Second, appellate counsel asserted an ineffective assistance of trial counsel claim based on trial counsel's failure to call Long's sister, who would have corroborated Irby's statement that she did not see anyone cradling Sherman's head after he was shot. The Illinois Appellate Court affirmed Long's conviction, finding his arguments regarding the closing argument comments waived because he failed to object at trial and raise the issue in post-trial motion practice, and otherwise not so improper as to require reversal, and finding the ineffective assistance of counsel claim adequately determined by the judge post-trial. Long filed a petition for leave to appeal ("PLA"), which was denied.

Long filed a timely *pro se* state post-conviction petition that argued appellate counsel was ineffective for failing to present the claims that the evidence at trial was insufficient to convict and that the State allowed the perjured testimony of Irby. Counsel was appointed, but he did not file an amended petition. The petition was dismissed.

Long appealed this dismissal, arguing that appellate counsel was ineffective for failing to appeal the perjured testimony issue, and that post-conviction counsel was ineffective for failing to amend the petition to include claims based on the hearsay letter reference, comments in closing argu-

ment that there was no evidence of another perpetrator and references to facts not in evidence, and ineffective assistance of trial counsel. A divided panel of the Illinois Appellate Court upheld the dismissal of Long's state post-conviction petition, holding that Long was not prejudiced by the State's failure to correct the false testimony at trial, therefore appellate counsel was not ineffective, and post-conviction counsel provided reasonable assistance because he was not obligated to raise additional allegations of ineffective assistance of appellate counsel. The Illinois Supreme Court denied Long's PLA.

Long filed the instant petition *pro se* on July 19, 2011, arguing: (1) he was denied a fair trial due to the State's knowing use of Irby's perjured testimony and improper comments in closing argument, including the *Gone With the Wind* reference; (2) ineffective assistance of appellate counsel for failing to argue the perjured testimony issue; and (3) ineffective assistance of post-conviction counsel for failing to amend the petition to include additional allegations of ineffective appellate counsel. The district court dismissed Long's petition, finding the prosecutorial misconduct claims were procedurally defaulted and meritless, as Long had not shown a reasonable likelihood that Irby's testimony or the closing argument comments prejudiced the trial outcome. The district court also found Long's ineffective assistance of counsel claim, although not procedurally defaulted, to be without sufficient merit to overturn the state court. The district court dismissed petitioner's post-conviction counsel ineffective assistance claim as procedurally barred.

## II. ANALYSIS

On the appeal of a writ of habeas corpus denial, the Court reviews a district court's rulings on issues of law *de novo* and findings of fact for clear error. *Denny v. Gudmanson*, 252 F.3d 896, 900 (7th Cir. 2001). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established that a federal court may grant habeas relief on a claim adjudicated by a state court on the merits only if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "When the case falls under § 2254(d)(1)'s 'contrary to' clause, we review the state court decision *de novo* to determine the legal question of what is clearly established law as determined by the Supreme Court and whether the state court decision is 'contrary to' that precedent." *Denny*, 252 F.3d at 900. Factual findings by the state court that are reasonably based on the record are presumed correct unless rebutted by clear and convincing evidence. *See id.*; 28 U.S.C. § 2254(e)(1). AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but imposes a difficult standard that requires the petitioner to show the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded agreement." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011).

However, a federal court may not consider the merits of a habeas claim unless that federal constitutional claim has been fairly presented to the state courts through one complete round of review, either on direct appeal or through post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "Fair presentment contemplates that both the operative facts and the controlling legal principles must be submitted to the state court." *Malone*, 538 F.3d at 753 (citation omitted) (internal quotation marks omitted). Failing to properly present the federal claim at each level of state court review results in procedural default, which can only be overcome if the petition demonstrates cause for and prejudice from the default, or a miscarriage of justice due to actual innocence. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Cause is "ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Id.* "Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial advantage, infecting his entire trial with error of constitutional dimensions." *Id.* (citation omitted) (internal quotation marks omitted). This Court's review of the question of procedural default is *de novo*. *Malone*, 538 F.3d at 753.

If the district court did not have the opportunity to consider an argument on the merits, it is forfeited in this Court. *Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) ("A party may not raise an issue for the first time on appeal.").

### A. The *Napue* Claim & The Ineffective Assistance of Appellate Counsel Claim Based on the *Napue* Claim

### 1.  Prosecution's Failure to Correct Perjured Testimony

Long asserts that he was denied a fair trial because of the prosecution's knowing use of perjured testimony.  According to Butler, the perjured testimony claim is procedurally defaulted because, although Long's post-conviction briefs argued appellate counsel was ineffective for failing to present this argument, the failure to raise this issue separately from an ineffective assistance claim is not fair presentment to the state court, citing *Lewis v. Sternes*, 390 F.3d 1019 (7th Cir. 2004).  Long argues that he presented the Illinois courts with the operative facts and controlling legal standards necessary to evaluate this claim and therefore it is not defaulted, citing *Malone v. Walls*, 538 F.3d 744 (7th Cir. 2008).

In *Lewis*, this Court found that petitioner had defaulted claims raised in his post-conviction petition only as examples of ineffective assistance of counsel, explaining, "[a] meritorious claim of attorney ineffectiveness might amount to cause for the failure to present an issue to a state court, but the fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise."  390 F.3d at 1026. We went on to find that the ineffective assistance of counsel claims were themselves defaulted because they were not presented in the correct appellate proceeding.  *Id.* at 1026, 1029–30.  Although we found procedural default in *Lewis*, that case did not announce a broad rule that a constitutional claim embedded in an ineffective assistance claim has never been fairly presented to the state courts.

On the contrary, in *Malone*, we reviewed *Lewis* and another ineffective assistance of counsel/embedded constitutional claim fair presentment challenge, finding for the petitioner. The State argued the ineffective assistance of trial counsel claim was procedurally defaulted because it had not been presented as independent from the claim that appellate counsel was ineffective for failing to raise that claim. 538 F.3d at 753–54. However, we found that "a fair reading of the record" revealed the state courts had been given a full opportunity to consider this issue because the petitioner made it clear that he was seeking redress of his trial counsel's errors in failing to present certain witnesses by extensively detailing the factual basis of trial counsel's errors, and by citing the appropriate federal case and standard for a trial counsel ineffective assistance finding. *Id.* at 754. We distinguished *Lewis* by explaining there the claims had been defaulted "because they had not been presented as independent claims for relief, but only as examples of counsel's failures." *Id.* at 755. Malone's presentation of the ineffective assistance of appellate counsel claim was "as a means for the court to reach the ineffective assistance of trial counsel, i.e., as the cause for failing to raise the ineffective assistance of trial counsel claim." *Id.* Because Malone "makes clear that he is asking the court to redress the failure of his trial counsel, an issue the court can reach if it determines that his appellate counsel also was ineffective[,] [h]is presentation, therefore, does not suffer from the infirmities that we identified in the petitioner's submissions in *Lewis*." *Id.*

As in *Malone*, Long has raised an ineffective assistance of appellate counsel claim as a means for the Court to reach the

perjured testimony claim. *See* 538 F.3d at 75.[1] Long's operative petition is his self-drafted petition because appointed counsel never amended, therefore it should be given a "generous interpretation" in this Court. *See Lewis*, 390 F.3d at 1027. The ineffective assistance of Long's appellate counsel, discussed below, gave him "cause" for failing to raise the *Napue* claim in the state courts. Although embedded in his ineffective assistance of counsel claim, Long fairly presented the factual and legal basis for the perjured testimony claim to the Illinois state court and, importantly, that court considered the issue on its merits.

The Court examines four factors to determine whether a petitioner has fairly presented his federal claim to the state courts: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts

---

[1] Butler also argues that *Malone* should be considered an outlier because there the Illinois Appellate Court considered the ineffective assistance of trial counsel claim only by relaxing its state procedural requirements because appellate counsel filed an affidavit admitting his error in not bringing the claim. However, this reasoning is not reflected in the *Malone* decision. And appellate counsel's *mea culpa* would not have been the trigger for that review. Rather, any appellate ineffective assistance claim would spark a similar analysis of an allegedly waived issue, whether or not the claiming petitioner had such straightforward evidence of ineffectiveness. *See Malone*, 538 F.3d at 750 (explaining, "[g]enerally, defendant's failure to raise this issue on direct appeal would result in waiver. However, the waiver rule is relaxed when a defendant alleges that failure to raise an issue on appeal constituted the ineffective assistance of counsel").

that is well within the mainstream of constitutional litiga-
tion." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir.
2001). Long cited *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct.
1173, 3 L. Ed. 2d 1217 (1959), which examines a prosecutor's
knowing use of perjured testimony as a Fourteenth
Amendment issue. Long used Illinois cases on the same is-
sue. *See, e.g.*, *People v. Olinger*, 680 N.E.2d 321, 331, 176 Ill. 2d
326, 223 Ill. Dec. 588 (1997) (citing *Napue*); *People v. Jimerson*,
652 N.E.2d 278, 284, 166 Ill. 2d 211, 209 Ill. Dec. 738 (1995)
(same). Long explicitly framed this as a due process issue
and his facts fit squarely within the *Napue* framework.

Furthermore, when considering Long's case, the appel-
late court engaged in the same kind of analysis as in *Malone*,
discussing whether the perjured testimony issue was so
prejudicial that the verdict should be overturned. SA.81–84.
In so doing, the court reiterated the circumstances of Irby's
testimony at both trials, the State's failure to correct that tes-
timony, and Long's rebuttal witness. SA.83–84. The court
concluded petitioner did not show a reasonable likelihood
that Irby's false testimony would have changed the verdict
and declared, "[b]ecause this issue was not meritorious,"
appellate counsel was not ineffective. SA.84. It is clear from
the opinion that the Illinois Appellate Court squarely con-
sidered the factual and legal basis of this claim. We find,
therefore, that Long's due process claim is not procedurally
defaulted and consider its merits.

A federal court may grant a writ of habeas corpus on an
issue adjudicated on the merits by the state court only if the
adjudication of that claim "resulted in a decision that was
contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Su-

preme Court of the United States" or "was based on an un-reasonable determination of the facts in light of the evidence presented in the State court proceeding."     28 U.S.C. § 2254(d).   We review the state court's legal conclusions *de novo.  Hall v. Washington*, 106 F.3d 742, 748 (7th Cir. 1997).   In *Hall*, we explained:

> The statutory "unreasonableness" standard al-lows the state court's conclusion to stand if it is one of several equally plausible outcomes.  On the other hand, Congress would not have used the word "unreasonable" if it really meant that federal courts were to defer in all cases to the state court's decision.  Some decisions will be at such tension with governing U.S. Supreme Court precedents, or so inadequately support-ed by the record, or so arbitrary, that a writ must issue.

*Id.* at 748–49.

The Illinois Appellate Court's finding that the Irby per-jury issue was "not meritorious" was an unreasonable appli-cation of clear Supreme Court precedent holding that "a conviction obtained by the knowing use of perjured testimo-ny is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *See United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue*, 360 U.S. at 269. A constitutional violation occurs if the State allows perjured testimony to go uncorrected, even if it did not solicit the

false evidence. *Id.* Either way, the perjured testimony prevents "a trial that could in any real sense be termed fair." *Id.* at 270 (quoting *People v. Savvides*, 136 N.E.2d 853, 855, 1 N.Y.2d 554, 154 N.Y.S.2d 885 (N.Y. 1956)).

During Long's first trial, Irby identified Long as the shooter, but then testified that she told the State's Attorneys and Investigator Walter that she lied about seeing Long shoot Sherman in the back. During the second trial, the same State's Attorney put Irby on the stand, where Irby told her initial story about seeing Long shoot Sherman. The State's Attorney did not ask Irby any questions about her recantation under oath at the first trial. Defense counsel cross-examined Irby on her prior assertion that her story was a lie, but Irby denied telling anyone from the State's Attorney's Office that she did not, in fact, see Long shoot the victim. Again, the State's Attorney did not correct Irby's testimony. Rather, in closing, the prosecutor referenced the defense's cross-examination of Irby on her statements to Walter, without mentioning the prior trial testimony. SA.149–50. The prosecutor then argued that Irby was credible and affirmatively relied on Irby's changing story to bolster her credibility, arguing: "Maybe [Irby] thought if she told the State's Attorney's Office she wasn't telling the truth she wouldn't have to testify. But when she came in here and was under oath, she told you what she saw[.]" SA.150.

A government lawyer's use of perjured evidence is a threat to the concept of ordered liberty. *See Napue*, 360 U.S. at 269. This threat is just as pernicious if the testimony goes only to the credibility of the witness, because "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is

upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Id.* Illinois separately acknowledges the State's obligation in this regard, *see, e.g.*, *People v. Steidl*, 685 N.E.2d 1335, 1345, 177 Ill. 2d 239, 226 Ill. Dec. 592 (1997) ("If a prosecutor knowingly permits false testimony to be used, the defendant is entitled to a new trial."), and has incorporated this concept into its rules of professional conduct, *see* Ill. Supreme Ct. Rules of Prof'l Conduct R. 3.8(a) ("The duty of a public prosecutor is to seek justice, not merely to convict.").

That defense counsel later did what he could to minimize the damage of Irby's perjured testimony does nothing to reduce the State's duty to correct the perjured testimony. Just because the jury heard Walter explain during the defense case that Irby's story had changed does not turn "what was otherwise a tainted trial into a fair one." *Napue*, 360 U.S. at 270; *see also United States v. Freeman*, 650 F.3d 673, 680–81 (7th Cir. 2011) (finding reasonable possibility that perjured testimony affected jury decision, even though the government stipulated to facts contradicting that testimony at a later point in the case). Additionally, the fact that the jury heard from another witness who challenged Irby's recollection merely set up the kind of credibility comparison that is the bread and butter of a trial—it does not address the problem that the jury should never have heard that testimony in the first place. Even if this evidence was only used by the jury to assess Irby's credibility, the State's failure to correct that evidence was a clear due process violation and the Illinois court's decision to the contrary was unreasonable. *Napue*, 360 U.S. at 270.

But the import of this evidence goes beyond credibility. The case against Long was weak. The Illinois Appellate Court itself noted the evidence against Long was "not overwhelming." SA.83. Without any physical evidence linking Long to the crime, the State had to rely on the testimony of two eyewitnesses, Irby and Edwards. Edwards' testimony about the scene—that she saw Long shoot Sherman, that she then cradled his head until officers arrived at the scene—was brought into question by the other witnesses' stories and was also different from her testimony at the first trial. The State's other two witnesses refused to name Long as the shooter at the second trial. So that left Irby as the only witness whose testimony was not directly contradicted or questioned. The Court considers the trial record as a whole when evaluating the effect of the perjured testimony on the jury's verdict. *See Napue*, 360 U.S. at 266, 272 (eyewitness's testimony "extremely important" to State's case); *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (perjured testimony was key to prosecution's case). Irby's testimony and credibility were vital to the State's case.

Furthermore, Irby's recantation—had the State honestly presented it to the jury—would have corroborated the other two eyewitnesses who also changed their initial testimony naming Long as the shooter. The cumulative weight of Irby's perjured testimony creates a reasonable likelihood that, with so little other evidence, the State's failure to fairly present her shifting story influenced the jury's verdict.

Therefore, even though our review is deferential under AEDPA, the Illinois Appellate Court's determination that the State's failure to correct the perjured testimony did not influ-

ence the jury's decision was an unreasonable application of *Napue*. Long is entitled to habeas relief on this claim.

## 2. Ineffective Assistance of Appellate Counsel

Long also brings a separate ineffective assistance of appellate counsel claim based on the perjured testimony claim. Butler does not argue that this claim is procedurally defaulted—indeed, the appellate court specifically considered and rejected it. SA.78.

On habeas review, a federal court determines whether the state court's application of the ineffective assistance standard was unreasonable, not whether defense counsel's performance fell below *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), standards. *See Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." (citation omitted) (internal quotation marks omitted)). The state court is granted "deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* To find a state court's application of *Strickland* unreasonable is a high bar requiring "clear error." *See Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). The unreasonable application of federal law will lie "well outside the boundaries of permissible differences of opinion" and will be a clearly established Supreme Court precedent unreasonably extended to an unsuitable context or the unreasonable refusal to extend that rule somewhere it should have applied. *Id.* at 602.

Ineffective assistance of counsel claims are mixed questions of fact and law reviewed *de novo*, "with a strong presumption that the attorney performed effectively." *Allen*, 555 F.3d at 600. When considering ineffective assistance claims, a court must determine whether counsel's performance fell below an "objective standard of reasonableness" and that this performance prejudiced the petitioner, i.e. "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

The Illinois Appellate Court held that appellate counsel was not ineffective because the issue of whether Irby's uncorrected testimony prejudiced the trial was not meritorious. For the same reasons discussed *supra*, the Illinois Appellate Court's finding that the prosecution's actions did not prejudice the trial outcome, and therefore that this issue was not meritorious, was clear error and a misapplication of the Supreme Court's holding in *Napue*.

Furthermore, appellate counsel's failure to bring this claim cannot be considered trial strategy or objectively reasonable performance. *See Sanders v. Cotton*, 398 F.3d 572, 585 (7th Cir. 2005) (failure to make "an obvious and clearly stronger argument" was deficient performance (citation omitted)). Appellate counsel is not required to raise every non-frivolous issue and her performance "is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015). The *Napue* issue was obvious from the trial record itself. The question of whether the perjured testimony prejudiced Long's defense was also clearly stronger than the claims that were raised.

Appellate counsel brought only two issues on direct appeal: (1) challenging the "Gone With the Wind" and personal anecdote references in the prosecution's closing statement and (2) ineffective assistance of trial counsel for failing to call Long's sister as a witness to corroborate Irby's testimony that she did not see anyone cradling Sherman's head at the scene. The appellate court rejected both arguments, although over a strongly worded dissent that described the prosecutor in closing as having "put her thumb on the scale and tip[ped] the balance in favor of the State with a wholly improper—and I submit grossly prejudicial—argument." SA.69. A challenge to the prosecutor's misconduct in allowing the perjured testimony would have been a powerful challenge to the conviction. Considering the dissenting justice's reaction to the other comments, it is likely that this claim, especially when considering the weak case against Long, would have prompted a finding of prejudice.

The second issue was not strong: the testimony of Long's sister would have been used to corroborate Irby's version of the scene and to undermine the prosecution's only eyewitness who did not eventually recant. However, the detail of Edwards' testimony that this evidence would attack—the cradling of the victim's head—does not directly call into question her identification of Long as the shooter or significantly undercut her credibility. Long's sister was a family member and therefore open to allegations of bias. In addition, trial counsel's strategy would not have been to bolster Irby's testimony: this witness would eventually name Long as the shooter and her changing story made her an unpredictable witness. This claim was weak at best. It was most likely that the appellate court would not have found preju-

dice even if this choice of witnesses could be considered ineffective assistance.

Appellate counsel brought one claim on appeal that prompted a strong dissent, therefore this case does not rise to the level of *Shaw v. Wilson*, where counsel argued a frivolous claim rather than one that was "genuinely arguable under the governing law." *See* 721 F.3d 908, 916 (7th Cir. 2013). However, the failure to bring the strong *Napue* due process claim on appeal cannot be characterized as strategic, rather it was deficient performance.

We hold the State's failure to correct Irby's denial of her recantation prejudiced Long and the Illinois Appellate Court's finding otherwise is not a reasonable application of the *Strickland* prejudice standard. Long is entitled to habeas relief on his claim of ineffective assistance of appellate counsel based on the failure to challenge the State's use of perjured testimony.

## B.  Remaining Claims

### 1.  Prosecution's Use of Quote from *Gone With the Wind* & Personal Anecdote From Another Trial

Long also asserts violations of his due process rights under *Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1983), because, during closing argument, the prosecution used a reference to *Gone With the Wind* to comment on the professed ignorance of the crowd of witnesses to the shooting and a personal anecdote from another murder trial to imply that Long had intimidated witnesses. Butler contends these claims are procedurally defaulted because the Illinois Appellate Court disposed of them on an independent and adequate state ground. We agree that because

these claims are defaulted and Long has not shown excuse for the default, the Court cannot consider them.

During Long's direct appeal the Illinois Appellate Court rejected these two claims as waived because Long had not objected at trial or included these claims in his post-trial motions. SA.62. A state court's rejection of an argument on this basis is an adequate and independent state law ground that results in default for federal habeas purposes. *See Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010). That the appellate court then reviewed the waiver for plain error does not create a merits determination that would cure default. *See Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005) ("[A]n Illinois court does not reach the merits of a claim simply by reviewing it for plain error."). These two claims are procedurally defaulted.

Long cannot escape this clear default, and so instead seeks to excuse it by asserting that his trial, appellate, and then post-conviction counsel were ineffective in bringing these claims. A state court procedural default may be excused if the petitioner can demonstrate "cause," defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule," *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), and "prejudice," that the errors at trial "worked to his *actual* and substantial disadvantage, infecting" the trial with "error of constitutional dimensions," *Lewis*, 390 F.3d at 1026. However, Long did not raise the claims of ineffective assistance of trial and appellate counsel through one complete round of state court review and therefore these claims, too, are defaulted. *See Gray v. Hardy*, 598 F.3d 324, 330 (7th Cir. 2010) ("But to use the independent

constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, [petitioner] was required to raise the claims through one full round of state court review, or face procedural default of those claims as well.").

Long argues, however, that ineffective assistance by post-conviction counsel is the cause for the default of the ineffective appellate counsel claim, and the Court should consider this issue now because post-conviction proceedings were the first time that particular claim could have been brought, citing *Martinez v. Ryan*, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013). As we recently explained, "[i]n *Martinez* and *Trevino*, the Supreme Court held that procedural default caused by ineffective postconviction counsel may be excused if state law, either expressly or in practice, confines claims of trial counsel's ineffectiveness exclusively to collateral review." *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014) (noting Wisconsin law required defendants to bring ineffective assistance of trial counsel claims on direct review and finding default). This is because "the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim." *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (citing *Martinez*, 132 S. Ct. at 1317) (internal quotation marks omitted).

Despite the narrow holding of *Martinez* and *Trevino*, Long argues that this Court should extend these cases beyond those instances where state procedural rules dictate ineffective assistance of trial counsel claims be brought on collateral review to cover post-conviction counsel's failure to bring ineffective assistance of appellate counsel claims. The majority

of other circuits that have examined this question have re-
fused to expand this narrow exception to the general prohi-
bition against excusing procedural default via post-
conviction ineffective assistance claims. *See Dansby v. Hobbs*,
766 F.3d 809, 833 (8th Cir. 2014) (joining the Fifth, Sixth, and
Tenth Circuits in refusing to extend *Martinez* to appellate in-
effective assistance claims); *Hodges*, 727 F.3d at 531. Long ar-
gues that we should instead follow the Ninth Circuit in find-
ing the reasoning in *Martinez* applies equally to a claim of
ineffective assistance of appellate counsel. *See Ha Van Ngu-
yen v. Curry*, 736 F.3d 1287, 1295–96 (9th Cir. 2013). However,
this Court has recently interpreted *Martinez* and *Trevino* as
holding "that procedural default caused by ineffective post-
conviction counsel may be excused if state law, either ex-
pressly or in practice, confines claims of trial counsel's inef-
fectiveness exclusively to collateral review," *Nash*, 740 F.3d at
1079, and we do not see any reason to depart from that un-
derstanding, or the majority of circuits, here. The default of
these claims is not excused under *Martinez*.

### 2. Prosecution's Reference to a Letter Not in Evidence & Improper Shifting of the Burden of Proof

Long further argues that the prosecutor referenced the
contents of a letter that was not in evidence to bolster the
credibility of a key witness. In rebuttal closing, the prosecu-
tion explained that Irby wrote a letter to a friend in which
she stated that she saw a man shoot another man four times
in the back. SA.170–71. Neither the letter nor its contents
had been admitted into evidence, so the judge *sua sponte*
made and sustained an objection to the prosecution's im-
proper reference to facts not in evidence. SA.171. Long ar-
gues the prosecutor's statements had a clear effect on the ju-

ry, because the jurors sent a note to the trial judge asking why the letter was not entered into evidence but could be referenced. SA.108. Long also asserts that the State improperly shifted the burden of proof to him by repeatedly referencing the lack of evidence of another shooter.

Butler contends these claims are forfeited because neither was presented to the district court as either a claim of prosecutorial error or ineffective assistance of trial or appellate counsel. *See Pole*, 570 F.3d at 937 ("[W]here a party raises a specific argument for the first time on appeal, it is waived even though the 'general issue' was before the district court[.]" (citing *Domka v. Portage County, Wis.*, 523 F.3d 776, 783 (7th Cir. 2008))). However, a petition prepared without the assistance of counsel is owed a "generous interpretation," *see Lewis*, 390 F.3d at 1027, and these claims—although not listed separately—were presented as part of the prosecutorial misconduct count. *See* SA.10, 15–16. Therefore, even if the district court did not specifically address these claims in its opinion, Long did not forfeit these claims.

Butler further argues that these claims are procedurally defaulted because Long failed to present them through one complete round of state court review. Butler maintains Long asserted these claims as examples of a state law-based post-conviction counsel ineffective assistance claim, which did not fairly present what is now a federal due process claim to the Illinois state courts.

We agree and find that these claims are procedurally defaulted. During his state post-conviction appeal, Long included these two alleged prosecutorial missteps in his claim for failure of post-conviction counsel to render reasonable assistance. *See* Doc. 13-7, at Count II. Long based his claim

on Illinois law, which provides that appointed post-conviction counsel must give a reasonable level of assistance to the petitioner. *See People v. Owens*, 564 N.E.2d 1184, 1189, 139 Ill. 2d 351, 151 Ill. Dec. 522 (1990) (explaining, "[t]he right to the assistance of counsel at trial is derived from the sixth amendment of the United States Constitution, whereas the assistance of counsel in post-conviction proceedings is a matter of legislative grace and favor which may be altered by the legislature at will" (citation omitted) (internal quotation marks omitted)). This claim was presented only as a state claim—Long cited no federal law and the Illinois Appellate Court treated it only as a state law claim. *See* SA.85–86. The Illinois courts did not have a fair opportunity to consider a federal basis for these two claims. *See Malone*, 538 F.3d at 753 (fair presentment of a claim requires that "both the operative facts and the controlling legal principles must be submitted to the state court" (citation omitted)); *Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) (claim not fairly presented when petitioner failed to cite any federal cases). Long makes a general argument that his trial and appellate counsel's ineffectiveness should excuse this default. However, as discussed *supra*, the Court declines to extend *Martinez* and *Trevino* beyond their narrow holdings focused on the first opportunity to challenge trial counsel's ineffectiveness on collateral review. These claims are procedurally defaulted and we will not consider them.

### 3. Ineffective Assistance of Counsel

Long asserts an ineffective assistance of trial counsel claim for counsel's failure to object to the prosecution's improper statements during closing argument and an ineffective assistance of appellate counsel claim for failing to bring

this claim against his trial counsel. Butler contends these claims are procedurally defaulted because Long did not present them through one complete round of state review.

In his post-conviction appeal, Long included a claim that post-conviction counsel was ineffective for failing to bring an appellate counsel ineffective assistance claim. Doc. 13-7 at 74–89. Although it may be broadly argued that this claim subsumes within it the facts of an ineffective assistance of trial counsel claim, as discussed above, the post-conviction ineffectiveness claim was based solely on Illinois law, therefore it did not fairly present both the factual and legal basis of this claim to the state court. *See Malone*, 538 F.3d at 753. The appellate counsel ineffectiveness claim is closer to the surface, but again, this claim was never presented as a federal claim, and the Illinois Appellate Court did not have the opportunity to consider it, therefore there is no exhaustion and the claim is defaulted. And although Long argues generally that this default should be excused by those same counsels' ineffectiveness, the trial counsel issue should have been brought on direct appeal, *see Nash*, 740 F.3d at 1079; *Murphy v. Atchison*, No. 12 C 3106, 2013 WL 4495652, at \*22 (N.D. Ill. Aug. 19, 2013) ("In Illinois, collateral proceedings are not the first opportunity to raise an ineffective assistance of counsel claim. Thus, numerous courts in this district have held that *Martinez* is inapplicable to federal habeas corpus petitions filed by Illinois prisoners." (citations omitted)), and the Court declines to extend *Martinez/Trevino* to cover the appellate counsel ineffectiveness claim.

Long's ineffective assistance of counsel claims based on due process violations by the prosecution during closing ar-

gument are procedurally defaulted and will not be considered.

### III. CONCLUSION

For the foregoing reasons, the state courts unreasonably applied Supreme Court precedent in finding that the State's knowing use of perjured testimony did not prejudice Long at trial and that appellate counsel was not ineffective for failing to challenge the State's use of perjured testimony. Therefore, we REVERSE the district court's judgment on those issues and REMAND with instructions to grant the writ. The district court's writ should order that Long is released unless Illinois gives notice of its intent to retry Long within a reasonable time fixed by the district court.