EASTERBROOK, Circuit Judge. Larriec Sherman was shot to death in June 2001. Four witnesses identified Pay-sun Long as the gunman; their statements were recorded on video. Two of the four recanted before Long’s trial. The other two—Keyonna Edwards and Brooklyn Irby—testified, while the video statements of the two recanting witnesses were introduced. Irby, too, had recanted before trial, telling Frank Walter, an investigator for the State’s Attorney, that police officers had coerced her to name Long as the shooter. But Irby testified consistently with her video statement. On cross-examination she conceded recanting but told the jury that her original statement was true and her recantation false. The jury believed the testimony that Irby and Edwards gave in open court, convicting Long of murder. A state court vacated this conviction because the prosecutor had argued, without support in the record, that the" recanting witnesses feared Long and his friends. At Long’s second trial the evidence proceeded as at the first. Edwards and Irby identified Long in court as the killer; the other witnesses’ video- statements were introduced. But this time, when asked on cross-examination about her recantation, Irby denied telling Walter that she had been coerced to identify Long. The defense called Walter, who testified that Irby had indeed told him that her identification had been coerced. The prosecutor did not contest Walter’s testimony either on cross-examination or during closing argument. The jury convicted Long a second time, and he was sentenced to 51 yéars in prison. The state’s appellate court affirmed on direct appeal and affirmed again after a judge denied Long’s application for collateral relief. 409 Ill. App. 3d 1178, 377 Ill. Dec. 757, 2 N.E.3d 673 (2011). A district court denied Long’s application for relief under 28 U.S.C. § 2254, but a panel of this court reversed. 809 F.3d 299 (7th Cir. 2015), The panel concluded that, by not spontaneously correcting Irby’s testimony, the prosecutor violated the rule of Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and successors such as Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The panel understood these cases to establish that, whenever any witness makes a statement that the prosecutor knows is untrue, the Due Process Clause of the Fourteenth Amendment requires the prosecutor to correct that statement immediately. That was not done in Long’s second trial, and the panel held that Long therefore is entitled to collateral relief. T5 reach this conclusion the panel also had to address Long’s procedural default in state court, which it did by holding that Long’s appellate lawyer had rendered ineffective assistance by not making a Napue argument on direct appeal. Because this case entails federal collateral review of a state conviction, we start with 28 U.S.C. § 2254(d), which as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA) provides: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.] The Appellate Court of Illinois ruled that any error was harmless in light of the other evidence inculpating Long. Davis v. Ayala, — U.S. -, 135 S.Ct. 2187, 192 L.Ed.2d 323 (2015), holds that a harmless-error decision is one “on the merits” as § 2254(d) uses that phrase. The state court concluded that Long had a good position as a matter of state law, because People v. Lucas, 203 Ill. 2d 410, 424, 272 Ill.Dec. 298, 787 N.E.2d 113 (2002), holds that a prosecutor must correct false testimony that the defense elicits. Given the harmless-error ruling, however, that conclusion did not benefit Long. The panel of our court, by contrast, went straight to federal law under Napue and its successors, and after holding that the prosecutor had violated the rule of Napue stated that Long is entitled to a new trial. The panel did not mention the doctrine of harmless error or apply the standard of Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Our order setting this case for rehearing en banc vacated the panel’s decision. . Long contends that the state courts rendered decisions “contrary to” Napm and similar decisions. Of course the state judges didn’t disparage or contradict Napue-, by citing Lucas the Appellate Court ruled in Long’s favor, though as a matter of state law. The state court did not analyze Napue at all. (It was cited once but not elaborated on, given Lucas.) But we know from Harrington v. Richter, 562 U.S. 86, 97-100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), that it does not matter whether a state court discusses federal precedent; § 2254(d)(1) applies whenever the state court makes a decision on the merits, no matter what the state judiciary says. See also Johnson v. Williams, 568 U.S. 289, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013). So we start with the merits—and because we conclude .that the' Supreme Court has not “clearly, established” that the doctrine of Lucas is a rule of federal constitutional law, we need not- address harmless error (or for that matter the procedural-default issue). Long understands Napue and its successors to establish that the prosecutor must immediately correct any false-testimony— and that it does not matter whether the defense already knows the. truth, or whether the jury learns the truth before deliberating. It is not hard to find statements that, taken at a high level of.generality, could be so understood. The Court summarized the Napue principle this way in California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984): “The most .rudimentary of the access-to-evidence cases impose upon the prosecution a constitutional obligation to report to the defendant and to the trial court whenever government witnesses, lie under oath.” This statement does not contain exceptions for testimony elicited by the defense, or testimony known by the defense to be false, or testimony corrected before the jury deliberates. But then the Supreme Court has never considered any of those possible qualifications. All Napue itself holds is that perjury known to the prosecution must be corrected before the jury retires. The Court did not say when or by whom. And Giglio identifies as the constitutional problem a prosecutor’s deliberate deception of the jurors, which can’t occur when the truth comes out at trial and the prosecutor does not rely on the falsehood. In Napue and its successors: (a) the false testimony was elicited by the prosecutor (we discuss an exception shortly); (b) the truth was unknown to the defense; (c) the prosecutor asked the jury to rely on the false testimony; and (d) the jury never learned the truth. In this case, by contrast, the false testimony was elicited by the defense, which knew the truth, and the prosecutor, instead of relying on the false testimony, accepted Walter’s testimony about Irby’s recantation but argued that her in-court identification was nonetheless correct. One passage in Napue, 360 U.S. at 269, 79 S.Ct. 1173, could be read to imply that a prosecutor must correct testimony no matter who solicited it. The Court wrote: “The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected”. This language must be understood in light of the citation the Court gave: Alcorta v. Texas, 365 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957). In Alcorta the prosecutor had told the witness not to be forthcoming and deliberately elicited a misleading statement; the defense and the jury never learned the truth, something Alcorta stressed. Read in context, the passage in Napue implies that a prosécutor must furnish the truth whether a falsehood had been elicited deliberately (in bad faith) or inadvertently. This is how Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), understood it, remarking that when the prosecution withholds exculpatory evidence there is a constitutional problem “irrespective of the good faith or bad faith of the prosecution.” It is accordingly not proper to read this passage of Napue as establishing that it is irrelevant who elicits the false testimony, whether the defense knows the truth, and whether the truth is presented to the jury. Those issues were not before the Court or expressly decided. It is similarly inappropriate to understand Giglio as holding anything about these matters. There the false testimony was elicited by defense counsel, but the Court made nothing of that fact, whose significance the parties had not briefed; instead it ruled for the defense because the prosecutor embraced the witness’s false statement and argued it to the jury as a basis of conviction, even though at least one of the prosecutors understood that the truth was exculpatory and unknown to the defense. The witness testified that no promises had been made; one prosecutor (who made them) knew otherwise, yet at trial the prosecution told the jury that the absence of a promise made the witness’s testimony especially credible. The Justices concluded that Brady required the truth’s disclosure and forbade the prosecutor from arguing that the witness had not been promised favorable treatment. This case therefore entails four questions that have never been expressly decided by the Supreme Court: • Do Napue and its successors apply when the defense rather than the prosecutor elicits the false testimony? • Must the prosecutor correct false testimony when defense counsel already knows the truth? • Does the Constitution forbid a conviction obtained when the prosecutor does not correct but also does not rely on the falsehood? • Does the Constitution forbid a conviction obtained when all material evidence is presented to the jury before it deliberates? Long believes that all four of these questions should be answered yes but does not contend that any of them has been answered in the defendant’s favor by the Supreme Court. Instead he believes that, once a general principle has been established, a court of appeals can resolve subsidiary issues such as these. That’s a possibility the Supreme Court has rejected as inconsistent with the statutory rule that, to support collateral relief, a principle must be “clearly established ... by the Supreme Court of the United States” rather than by an intermediate federal court. The Justices insist that a principle be made concretely applicable to the problem at hand before it may be used on collateral review. A recent example in this sequence said, when summarily reversing an appellate decision: The Ninth Circuit pointed to no case of ours holding [that the prosecutor must specify in advance of trial the precise theory of liability on which it would rely]. Instead, the Court of Appeals cited three older cases that stand for nothing more than the general proposition that a defendant must have adequate notice of the charges against him. ... This proposition is far too abstract to establish clearly the specific rule respondent needs. We have before cautioned the lower courts ... against “framing our precedents at such a high level of generality.” Nevada v. Jackson, 569 U.S. 505, 133 S.Ct. 1990, 1994, 186 L.Ed.2d 62 (2013). Lopez v. Smith, — U.S. -, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014). See also, e.g., Woods v. Donald, — U.S. -, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015). We appreciate that, if a general proposition inevitably entails some concrete application, then there’s no need to wait for the Justices to apply the principle in the inevitable way. But it is not obvious to us that the Napue principle requires a new trial when the prosecutor fails to correct a falsehood, but the defense knows about that falsehood and corrects it. To the contrary, this court held in United States v. Saadeh, 61 F.3d 510, 523 (7th Cir. 1995), that there is no constitutional violation in that situation. See also United States v. Adcox, 19 F.3d 290, 296 (7th Cir. 1994). The proposition that defense counsel’s knowledge of the truth is irrelevant therefore cannot be taken as clearly established by the Napue principle itself. Nor does the Napue principle establish that it is irrelevant whether the truth is presented in open court before the jury deliberates. Another way to ask whether the application of Napue when the defense knows the truth is so obvious that it must be taken as already established is to examine how the Justices have handled a related subject. The Napue-Giglio rule is a cousin to the Brady doctrine, which requires the prosecution to reveal material exculpatory evidence. The Justices themselves treat Na-pue and Brady as two manifestations of a principle that prosecutors must expose material weaknesses in their positions. See, e.g., Strickler v. Greene, 527 U.S. 263, 298-99, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). The Supreme Court has considered whether Brady requires the prosecution to disclose (or put before the jury) exculpatory or impeaching information known to the defense. The answer is no. See, e.g., United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (Brady applies only to information “unknown to the defense”). Our circuit has made the same point and added that there is no disclosure obligation under Brady if the defense easily could have found the information, even if it, didn’t find it in fact. See, e.g., United States v. Morris, 80 F.3d 1151, 1170 (7th Cir. 1996). Other circuits agree. See, e.g., United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990). Given how Brady is understood, an intermediate appellate court could not confidently predict that Napue, and Giglio . will be treated differently—let alone so confident that we could declare (as § 2254(d) requires) that this has already been clearly established by the Supreme Court, In this case what occurred may well have helped the defense rather than the prosecutor. Irby’s false testimony enabled the defense to depict her either as a perjurer (if she remembered what had happened) or as having a faulty memory (if she had forgotten); this could have helped the defense diminish the force of Irby’s identification. It is awfully hard to see why events that may .have helped the defense should lead to collateral relief in the absence of any clearly established legal transgression. When presented with the four open issues we have identified, the Supreme Court may resolve some or all of them in favor of a defendant in Long’s position. But it has not done so to date, and § 2254(d)(1) accordingly prohibits a grant of collateral relief. We do not attempt to determine how those questions would or should be resolved. Long presents other contentions that the panel resolved against him. 809 F.3d at 313-16 (quotation from Gone with the Wind; prosecutor’s anecdote; prosecutor’s reference to a letter not in evidence; ineffective assistance of trial counsel). We agree- -with the panel’s resolution of those issues and reinstate that-'-portion of its opinion without reproducing the discussion here. ■ Affirmed